IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                    Plaintiff,

      v.

DIOGENES A. DIONISIO,

                  Defendant.

OPINION AND ORDER

04-cr-30-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This case raises  a question regarding the circumstances under which the government violates a criminal defendant's right to a speedy trial when it fails to take steps to apprehend an accused noncitizen living overseas.  Defendant Diogenes Dionisio is a doctor and Philippine national who was indicted in 2004 for defrauding the United States, but not arrested until 2008 when he was visiting Guam.  He contends that the delay in the arrest has violated his right to a speedy trial under the Sixth Amendment and that the indictment against him must be dismissed.

The primary authorities for evaluating defendant's contention are <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972), and <u>Doggett v. United States</u>, 505 U.S. 647 (1992).  These cases hold that a court must consider factors such as the length of the delay, the relative fault of

1

the parties in causing the delay, whether the defendant asserted his right to a speedy trial once he learned of the criminal charges, the prejudice the delay caused the defendant and "other circumstances as may be relevant." Barker, 407 U.S. at 533.   In United States v. Wanigasinghe, 2007 WL 3254706  (W.D. Wis. Nov. 2, 2007), I weighed the factors set forth in Barker and Doggett and concluded that it did not violate the Sixth Amendment to wait 11 1/2 years to try a Sri Lankan national for bank fraud when the defendant had fled the United States just after committing his crime, the evidence showed that he took several steps intended to deter efforts to find him and the delay had not caused him any prejudice because the case would be tried almost exclusively on documents.  The Court of Appeals for the Seventh Circuit recently affirmed this decision. United States v. Wanigasinghe, – F.3d –,  2008 WL 4763336 (7th Cir. Nov. 3, 2008).

As in Wanigasinghe, apprehending the defendant in this case was complicated by his presence in a foreign country.  However, in his report and recommendation, the magistrate judge concluded that the 4 1/2 year delay could not be excused under the Sixth Amendment because the United States has an extradition treaty with the Philippines and there was a possibility that defendant would be prejudiced as a result of lost records and faded memories. The government's objections to the magistrate judge's report and recommendation are now before the court.

The magistrate judge discussed the facts in full in his report and recommendation, but

2

I will summarize them here.  In 1998, federal agents began investigating possible fraud by overseas doctors providing services under Tricare, the Department of Defense's health care program for military personnel.  In August 2001, this investigation led the government to defendant Diogenes Dionisio, a doctor and Philippine national living in Manila.  After interviewing defendant, agents slowly collected other evidence against defendant regarding a suspected kickback scheme in 1999 and 2000 in which defendant allegedly inflated his claims to the federal government and then split the excess payment with patients.  In February 2004, just before the limitations period expired, a federal grand jury in Madison indicted defendant on one count of conspiring to defraud the United States under 18 U.S.C. § 371 and two counts of making false claims under 18 U.S.C. § 287.

After the indictment, the government obtained a warrant for defendant's arrest but then made no effort to apprehend him because the agent investigating defendant's case believed that "Philippine corruption rendered extradition attempts futile."  Plt.'s Br., dkt. #41, at 6.  At the evidentiary hearing before the magistrate judge and in an affidavit, the agent provided one example in which a request for extradition was sent to the Phillipines for another doctor, but as soon as a provisional arrest warrant was issued, a Philippine newspaper publicized it, giving the suspect notice of the warrant and allowing him to evade arrest.

From 2004 to 2008, defendant lived at the same address and worked at the same

3

clinic.  When he went to Guam for a vacation in March 2008, federal agents detained him and transported him to Madison.  On April 17, this court released defendant from pretrial detention. Trial is scheduled for December 1, 2008.

The magistrate judge concluded that each of the four Barker/Doggett factors favored defendant: the delay was lengthy, the government was negligent in apprehending defendant in light of the extradition treaty between the United States and the Philippines, defendant asserted his rights soon after he learned of the indictment and there was a possibility that missing records and dimmed memories would prejudice defendant's ability to present a defense.  In its objection, the government concedes that four and a half years is sufficiently lengthy to trigger the speedy trial right (generally, any delay longer than one year will do the trick, United States v. Arceo, 535 F.3d 679, 684 (7th Cir. 2008)) and that defendant did not delay in asserting the right once he knew it was implicated.  Thus, the questions are whether defendant or the government is "more to blame" for the delay and whether an adequate showing of prejudice has been made.  Doggett, 505 U.S. at 651.

Defendant took no steps to evade arrest, making it difficult to argue that the delay was his "fault," unless it could be said that he is blameworthy simply for choosing to live in another country.  The government hints at such a view when it says that defendant "secrete[d] himself in a foreign land."  Dkt. #73, at 5.

Although the defendant's location is certainly relevant in determining the reason for

4

the delay, I cannot conclude that the government is relieved of all responsibility to act in any instance in which the defendant is located outside the United States. United States v. Bagga, 782 F.2d 1541 (11th Cir. 1986) (defendant's "absence from the country did not relieve the government of its obligations to make good-faith efforts to have him returned"). A key part of my conclusion in Wanigasinghe, 2007 WL 3254706, at *1, was not just that the defendant was in Sri Lanka but that he "committed crimes knowing that he would be leaving the country immediately because his student visa was expiring and that he took a number of steps intended to deter any efforts to find him outside the country." The court of appeals reiterated that view. Wanigasinghe, 2008 WL 4763336, at *2 ("[C]ommon sense might indicate that a person who leaves the country to avoid prosecution should not be allowed to complain that he was not prosecuted quickly enough.") See also Arceo, 535 F.3d at 685 (more than six-year delay did not violate speedy trial rights when defendant "fled to Mexico" and "hi[d] from authorities in a calculated effort to avoid arrest and prosecution"). Thus, defendant's residence in a foreign country does not give the government an automatic free pass; rather, it is part of the question whether the government pursued the defendant with "reasonable diligence." Doggett, 505 U.S. at 656. The government cites no authority in support of a contrary conclusion.

This leads to the question whether there were extenuating circumstances that would justify the government's inaction. The government says there were, citing its "good faith

5

[belief] that extradition of Dionisio would be futile" because of "corruption" and "secrecy" within the Philippine government. Dkt. #73, at 5. Certainly, it would be difficult to classify a failure to act as negligent when the course of action would not bring about the desired result, but in fact could hurt the government's chances of apprehending a suspect. "The government is not duty-bound to pursue futile legal gestures to return the defendant for trial." United States v. Mitchell, 957 F.2d 465, 469 (7th Cir. 1992). Courts in other circuits agree that the Sixth Amendment does not require the government to seek extradition of an accused living in a foreign country when doing so would be futile. E.g., United Statges v. Corona-Verbera, 509 F.3d 1105, 1115 (9th Cir. 2007); United States v. Blanco, 861 F.2d 773, 778 (2d Cir.1988).

Thus, the reason the government advances for its delay is fine as far it goes. Further, like the magistrate judge, I have no reason to doubt the government's representation that its delay was not an effort to gain a tactical advantage. The question is whether a reasonable connection exists between the  government's argument and the facts of this case. Doggett makes it clear that a pure heart is not sufficient if the government did not use due diligence: "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Id. at 357. See also Corona-Verbera, 509 U.S. at 1114 (good faith belief must be "supported by

6

substantial evidence"). This is where the government's argument fails. I agree with the magistrate judge that government has failed to adduce sufficient evidence to show that its decision to do nothing for more than four years constituted due diligence.

At the evidentiary hearing, most of the testimony provided by the government regarding perceived corruption was vague and conclusory. The agent testified that "the concern of the corruption was quite widespread and prevalent," Tr. at 34, dkt. 30, and that "there would be little opportunity for the warrant to be kept quiet because of the issue of secrecy and the potential for possible corruption because the officials could possibly bribed and therefore the warrant would be useless," id. at 36. However, when pressed, the agent provided only one concrete example supporting his view, in which a Philippine newspaper publicized a warrant after it was issued. An anecdote is not a national policy.

The government also cites an internet web page of the United States embassy in Manila as demonstrating the Philippine government's refusal to comply with the extradition treaty, but even if I assume that the document is authentic and admissible, it presents multiple problems. First, the date of the report is 2002; the government does not point to any information in its objection from 2004 to 2008, the most relevant time period. More important, as the magistrate judge noted, the report is *touting* "U.S.—Philippines Cooperation on Law Enforcement" and the similar rates of extradition by both countries:

The U.S. Government views the bilateral treaty on extradition as an extremely

important law enforcement and interdiction tool, a view that we believe is shared by the Government of the Philippines, as demonstrated by the close cooperation that exists between our two countries' law enforcement agencies in these cases.

* * *

In brief, the U.S.-Philippine extradition treaty is working, both countries are implementing it seriously, and both are benefitting from it.

The agent in this case disagrees with the conclusion that "U.S–Philippine treaty is working," but that was not his call to make.  An agent cannot make a unilateral decision in contradiction of the government's stated position and expect that to be deemed "due diligence," particularly when the agent did not take any other steps to pursue the defendant. I agree with the magistrate judge that a passive approach might have been reasonable initially, but as time wore on, "it became all the more pressing for the government to do *something*."  Rep. and Rec., at 17, dkt. #58.

The government cites other cases in which courts have excused the government's failure to file a formal extradition request, but each of these cases involved a defendant who was evading arrest or stronger evidence that seeking extradition would be futile. E.g., Corona-Verbera, 509 F.3d at 1115 (failure to seek extradition not negligent when expert and State Department confirmed that doing so would be futile and government publicized charges through television shows America's Most Wanted and Unsolved Mysteries); United States  v. Tchibassa, 452 F.3d 918, 924-25 (D.C. Cir. 2006) (failure to seek extradition of

8

defendant living in Zaire not negligent when United States did not have extradition treaty with Zaire; government made extradition request as soon as defendant moved to country that had treaty); United States v. Blanco, 861 F.2d 773, 778 (2d Cir. 1988) (failure to request extradition of Columbian national not negligent when "the President of Colombia had announced that he would not enforce the new treaty"); United States v. Walton, 814 F.2d 376, 379-80 (7th Cir. 1987) (failure to request extradition not negligent when Swedish officials told agents twice that defendant would not be extradited until he finished serving Swedish sentence).   Thus, like the magistrate judge, I conclude that the second Barker/Doggett factor tips in defendant's favor.

This leaves the question of prejudice.  The government concedes that a 4 1/2 year delay is "presumptively prejudicial" under Doggett, but then goes on to argue that defendant must still prove that the delay was "actually prejudicial."  Plt.'s Br., dkt. #73, at 3.  The government does not appear to appreciate the tension in its positions.  In legal proceedings, when one party is entitled to a "presumption" of a particular fact, he is not required to prove anything; it is the other party that must rebut the presumption, for example, as when the government must rebut the presumption of innocence in a criminal case.  Black's Legal Dictionary 1223 (8th ed. 2004)  ("Most presumptions are rules of evidence calling for a certain result in a given case unless the adversely affected party overcomes it with other evidence. A presumption shifts the burden of production or persuasion to the opposing

party, who can then attempt to overcome the presumption.")

Doggett reinforces the view that when the other factors favor the defendant, it is the government's burden to prove that the delay was not prejudicial.  The Court stated: "When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief."  Doggett, 505 U.S. at 658  (citations and footnotes omitted). In this case, the delay was only four and a half times "as long as that generally sufficient to trigger judicial review," but the government does not suggest that this difference is meaningful.

With the burden on the government, it cannot prevail.  This case is much different from Wanigasinghe, in which nearly all of the evidence against the defendant consisted of bank records.  In this case, the records show no wrongdoing. The government's theory is that the records are fraudulent and it intends to prove this primarily through testimony of defendant's patients from 1999 and 2000 and an oral confession that defendant allegedly provided in 2001 that the government did not record.   Under these circumstances, it seems almost certain that both defendant's and other witness's memories have been adversely affected by the passage of time.  In his report and recommendation, the magistrate judge noted several ways that defendant might be prejudiced and the government has not

10

"persuasively rebutted" any of them.

The government criticizes defendant for failing to identify specific witnesses that he cannot locate and records that have been destroyed, but that is asking defendant to remember what he says is forgotten.  Although defendant's affidavit lacked many details, the Supreme Court has recognized that "one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. . . . Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."  Doggett, 505 U.S. at 655.

In one sentence in its conclusion, the government questions whether a foreign national living outside the United States "even has a right to be tried speedily under the Sixth Amendment."  Plt.'s Br., at 12. dkt. #73.  The Court of Appeals for the Seventh Circuit considered this argument in Wanigasinghe, 2008 WL 4763336, at *2, but declined to adopt it in light of Boumediene v. Bush, 128 S. Ct. 222 (2008), which held that the Constitution does have extraterritorial application in some instances.  In any event, the government has waived this argument because it did not raise it before the magistrate judge or develop it in the objections to the report and recommendation.

Because I agree with the magistrate judge that the Barker/Doggett factors favor defendant, I must adopt the conclusion in the report and recommendation and dismiss the

11

indictment.

## ORDER

IT IS ORDERED that the magistrate judge's report and recommendation is ADOPTED and the indictment against defendant Diogenes Dionisio is DISMISSED on the ground that the government's delay in arresting defendant violated his rights under the Sixth Amendment.

Entered this 17th day of November, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge